**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Rodriques Carter, Appellant.

Appellate Case No. 2011-192646

Appeal From Hampton County
Carmen T. Mullen, Circuit Court Judge

Unpublished Opinion No. 2013-UP-240
Heard April 3, 2013 – Filed June 5, 2013

**AFFIRMED**

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General William M. Blitch, Jr., both of
Columbia, for Respondent.

**PER CURIAM:**  Appellant, Rodriques Carter, was convicted of criminal sexual
conduct (CSC) in the first degree, kidnapping, and burglary in the first degree.
Carter appeals, asserting the trial court erred in (1) finding that he opened the door
to inadmissible hearsay statements by the victim to her mother concerning the

identity of the victim's perpetrator and the circumstances of the assault and (2) permitting the solicitor to shift the burden of proof to Carter during his closing argument by remarking on Carter's failure to elicit certain testimony. We affirm.

1. Carter argues the trial court erred in finding he opened the door to inadmissible hearsay statements by Victim concerning the identity of her perpetrator and the circumstances of the assault, based upon Carter questioning Victim's mother (Mother) about Mother's conduct as a result of Victim's statements. The record shows that Mother testified on direct examination that she beat Carter with a lamp because of what she learned he had done to her daughter. On cross examination, Mother agreed she "beat [Carter] bloody," and that she beat him for about ten minutes. Defense counsel then asked, "Based on what, based on what your daughter said, right?" Mother replied, "No. Based on what I said." As defense counsel continued questioning Mother, he again asked her if she was going to kill Carter, and Mother acknowledged that was her intent. Counsel again asked, "Based on what your daughter said?" Mother responded, "My daughter didn't say that. I did." Thereafter, on re-direct examination, the following colloquy occurred:

> [Solicitor]: [Defense Counsel] asked you based upon what your daughter said. What did your daughter tell you?
>
> [Mother]: My daughter couldn't tell me anything but – – –
>
> [Defense Counsel]: Your Honor, I would – – –
>
> [Mother]: [Carter] raped her.

Defense counsel then objected to this testimony as hearsay. The Solicitor responded defense counsel had opened the door to the testimony, and defense counsel disagreed that he had done so. The trial judge instructed the parties to "just move past it." The solicitor stated, "I'm sorry?" and the trial court stated, "That's okay." The Solicitor then indicated he had not heard the court's ruling, and the trial judge stated, "Let's ask the next question. **Just don't ask that question**." (emphasis added). The solicitor then asked Mother why she got upset. When Mother began to respond by saying, "because my daughter – – –," the solicitor interrupted her and instructed her not to say what her daughter said. Mother then stated, "I'm not telling you what she said. I said because of my daughter. My child was raped. That was my reason of being upset." Defense counsel objected and

moved to strike this testimony, arguing the witness had no basis in fact from her own personal knowledge. The trial judge overruled the objection without further comment.

On appeal, Carter contends the trial court erred in finding he opened the door to inadmissible hearsay statements from Mother concerning who raped her daughter. He argues the trial court abused its discretion in determining Carter opened the door to the hearsay statements by Victim concerning the identity of the perpetrator and the circumstances of the assault, because defense counsel's questions concerned whether Mother's conduct of beating Carter was the result of statements by Victim, and he never questioned Mother regarding the substance of those statements.

At the outset, we find the only portion of testimony from Mother that is preserved for review is that where Mother stated she was upset because her daughter had been raped. Initially, the solicitor asked Mother what Victim had told her, and defense counsel objected to Mother's testimony identifying Carter as the person who raped Victim. Upon counsel's objection, the trial court specifically instructed the solicitor to move past it and to not ask that question. While the solicitor argued the defense opened the door to this testimony, there is no indication the trial court agreed with this position or found the objected-to testimony admissible on this basis. Rather, the trial court effectively sustained defense counsel's objection, directing the solicitor to move on and not to ask that question. Thereafter, counsel rephrased the question and made sure the witness understood she was not to state what the victim said. Defense counsel did not move to strike this testimony and did not ask for a mistrial. Accordingly, no issue is preserved for review as to this testimony. *See State v. Wilson*, 389 S.C. 579, 583, 698 S.E.2d 862, 864 (Ct. App. 2010) (holding appellate courts have recognized that an issue will not be preserved for review where a question is answered before an objection may be interposed and the trial court sustains a party's objection to improper testimony, if the party does not subsequently move to strike the testimony or move for a mistrial, the rationale being that without a motion to strike or motion for a mistrial, when the objecting party is sustained, he has received what he asked for and cannot be heard to complain about a favorable ruling on appeal). Further, though Carter notes the subsequently elicited testimony from Mother stating she was upset because her daughter had been raped, he does not assert on appeal that this testimony was improper hearsay or that its admission constituted reversible error.[1]

---

[1] At any rate, we find such testimony is not inadmissible hearsay, as it was merely Mother's explanation of why she was so upset, i.e. her belief her daughter had been

Finally, we find any error in admitting the evidence to be harmless. As argued by Carter, our supreme court, in the case of *Jolly v. State*, 314 S.C. 17, 443 S.E.2d 566 (1994), held that "[i]mproper corroboration testimony that is *merely cumulative to the victim's testimony* . . . cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration." *Id.* at 21, 443 S.E.2d at 569. However, as noted by the State, in *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011), a majority of our supreme court collectively overruled *Jolly* to the extent it imposed a categorical or per se rule regarding harmless error. *See id.* at 482, 716 S.E.2d at 95-96 (Kittredge, J., concurring in a separate opinion joined by Hearn, J.) (agreeing "with Chief Justice Toal that the apparent categorical rule emanating from *Jolly v. State* and its progeny precluding a finding of harmless error goes too far," and though it may be a rare occurrence for the State to prove harmless error beyond a reasonable doubt in these circumstances, such determinations are necessarily context dependent and a categorical rule is at odds with longstanding harmless error jurisprudence), *id.* at 483, 716 S.E.2d at 96 (Toal, C.J., dissenting) (disagreeing with the string of cases providing improperly admitted hearsay testimony that is merely cumulative to the victim's testimony can never be harmless error, finding those cases create a rule of per se prejudice when testimony is cumulative to the victim's testimony, and such a rule is contrary to the traditional analysis of improperly admitted hearsay

---

raped. *See* Rule 801(c), SCRE ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Additionally, this testimony was permissible under our rules of evidence, because the statement that Victim was raped did not go beyond the parameters set forth in our rules, which limit testimony corroborating a victim's complaint of sexual assault to time and place. *See* Rule 801(d)(1)(D), SCRE (providing a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony in a criminal sexual conduct case or attempted criminal sexual conduct case where the declarant is the alleged victim and the statement is limited to the time and place of the incident"). *See also Dawkins v. State*, 346 S.C. 151, 156, 551 S.E.2d 260, 262 (2001) (holding, when a victim in a CSC case testifies, evidence from other witnesses that the victim complained of a sexual assault is admissible in corroboration, limited to the time and place of the assault). Here, Mother's testimony that her daughter was raped does not go beyond the limited corroborative testimony allowed by Rule 801, SCRE.

testimony, which requires a finding of prejudice, and concluding *Jolly* should be overruled).

Here, we first note that not only did Victim testify that Carter raped her, but the neighbor, Marie, also testified that Victim told her Carter had raped her. No objection was made to this testimony by Marie, whose testimony occurred prior to that of Mother. Thus, Mother's testimony was cumulative to the unobjected-to testimony of Marie, and did not simply corroborate Victim's testimony. Additionally, the medical testimony of Dr. Morad supports Victim's testimony that something traumatic happened to Victim, as did the testimony of Marie and Marie's husband, who answered their door to the distraught Victim. Under the circumstances, Carter has not shown that the testimony of Mother in this regard prejudiced him. *See id.* at 484, 716 S.E.2d at 96 (Toal, C.J., dissenting) (providing a defendant should always be required to prove he suffered prejudice from the improper introduction of cumulative hearsay testimony).

2. Carter contends the trial court erred in permitting the State to shift the burden of proof to him by remarking, during closing arguments, on Carter's failure to elicit testimony concerning DNA evidence. We disagree.

"The State may not comment on a defendant's exercise of a constitutional right." *McFadden v. State*, 342 S.C. 637, 640, 539 S.E.2d 391, 393 (2000). "Specifically, the solicitor must not comment, either directly or indirectly, on a defendant's silence, failure to testify, or failure to present a defense." *Id.* Here, we do not believe the solicitor's argument, when examined in context, was a direct or an indirect comment on Carter's silence, his failure to testify, or his failure to present a defense. Rather, it was a response to defense counsel's consistent assertions during closing argument that, although there was evidence there were vaginal swabs taken during Victim's medical examination, there was no sperm and no DNA. The solicitor was merely attempting to counter defense counsel's argument that there was no DNA or sperm by pointing out that none of the witnesses were ever asked if there was DNA or sperm present.

However, even assuming the argument constituted an improper comment on Carter's constitutional right to remain silent or not to testify or call witnesses, we believe the comment was harmless and did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *See State v. Hill*, 382 S.C. 360, 369, 675 S.E.2d 764, 769 (Ct. App. 2009) (noting, in a case where appellant asserted the solicitor improperly commented on his right to remain silent and his right to not present a defense, while it is impermissible for the State to comment

directly or indirectly upon a defendant's failure to testify at trial, even improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant, and the defendant must show the improper comment deprived him of a fair trial). Further, we note the trial court charged the jury that the State bore the burden of proving Carter guilty beyond a reasonable doubt, that Carter had the constitutional right to remain silent and assertion of that right could not be considered or discussed by the jury, and that Carter was not required to prove his innocence, but the burden remained on the State to prove Carter's guilt. *See id.* at 370, 675 S.E.2d at 769 (finding the trial court's jury instruction that the defendant's silence could not be considered in any manner whatsoever and the defendant had no burden of proof and was not required to prove his innocence should be deemed to have cured any error or prejudice that may have resulted from any alleged improper comment from the solicitor's closing argument).

**AFFIRMED.**

**HUFF, WILLIAMS, and KONDUROS, JJ., concur.**